**WILSON N. JONES MEMORIAL HOSPITAL, Appellant,**

v.

**William M. DAVIS, Appellee.**

**No. 5680.**

Court of Civil Appeals of Texas, Waco.

June 9, 1977.

Rehearing Denied June 30, 1977.

James E. Henderson, Donald H. Flanary, Jr., Henderson, Bryant & Wolfe, Sherman, for appellant.

Jack A. Porter, Jr., Munson, Munson & Porter, P. C., Denison, for appellee.

OPINION

JAMES, Justice.

This is a negligence case. The sole question before us is whether there is any evidence of probative force to support the jury's findings authorizing exemplary damages. We hold that there is evidence of probative force to support such jury findings and thereby affirm the trial court's judgment.

Plaintiff-Appellee William M. Davis brought this suit against Defendant-Appellant Wilson N. Jones Memorial Hospital, a Corporation, for actual and exemplary damages for personal injuries sustained by Davis while he (Davis) was a patient in Defendant Hospital. The injuries were sustained as the result of an improper removal of a Foley catheter from Davis's bladder by an employee of Defendant Hospital.

Trial was to a jury, which found:

(1) On September 21, 1973, Leslie C. Looman (an employee of Defendant Hospital) failed to use ordinary care in removing or attempting to remove from Plaintiff the Foley catheter in question without first properly deflating the balloon portion.

(2) Which failure was a proximate cause of Plaintiff's injury and damage.

(3) On said date Looman was unfit to perform the duty of a hospital orderly involving the removal or attempted removal of a Foley catheter from patients such as Plaintiff.

(4) On said date and before the occasion in question, the Defendant Hospital was reckless in the employment and selection of Leslie C. Looman as a hospital orderly to perform, or the entrustment to him of, the duty of removing or attempting the removal of the Foley catheter from patients such as Plaintiff.

In this connection the trial court defined the term "reckless" as "more than momentary thoughtlessness, inadvertence, want of ordinary care, or error of judgment. It means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it."

(5 and 6) The jury found $17,100.00 actual damages, and

(7) $18,000 exemplary damages.

Based upon and in harmony with the jury verdict, the trial court entered judgment in favor of Plaintiff against Defendant Hospital for $35,100.00 and costs, from which the Defendant appeals insofar as the award of exemplary damages is concerned. We affirm.

Plaintiff Davis entered Defendant Hospital as a patient on September 16, 1973, for a transurethral resection of his prostate. This surgical procedure was performed on September 17, 1973 by Dr. Fernando Bustos. On September 21, 1973, Leslie C. Looman, an orderly employed by the hospital, attempted to remove a Foley catheter from Plaintiff Davis's bladder without first deflating the bulb which held it in place. Mr. Davis stopped the orderly and instructed him to get a nurse to remove the catheter; whereupon Mrs. Christine Keene, the registered nurse in charge of the floor, was summoned by Looman. Mrs. Keene deflated the bulb and removed the catheter. It was this attempted removal of the catheter from Plaintiff's bladder that occasioned the

damage of Plaintiff's sphincter muscle and brought about the serious personal injuries to Plaintiff which are the subject matter of this suit.

On September 6, 1973, Leslie C. Looman sought employment as an orderly with Defendant Hospital. On that date he completed an employment application which included the listing of references, and was interviewed by Mrs. Elwanda Musser, the hospital's Associate Director of Nursing. At the completion of the interview Mrs. Musser hired Mr. Looman and told him to report for work on September 10, 1973, which Looman did.

The normal procedures or hiring policies of the hospital called for the hospital to obtain four (4) employment references and three (3) personal references, and to check at least one employment reference and one personal reference *before* hiring an applicant. Mrs. Musser hired Looman prior to any reference check, for the reason stated by her that there was a critical need for orderlies, and the filling of such positions was difficult. Subsequent reference checks on Looman were incomplete and unanswered. On his employment application, Looman listed three employment references, which included "Johnson and Johnson" where he stated he was employed as a fork lift operator, and the United States Navy, where he stated he had served as a medical corpsman for eight months.

The only employment reference which the Defendant Hospital followed up was made by the Defendant *after* Looman was hired. This inquiry was made to Johnson and Johnson, who answered and verified that Looman had worked from June 1973 to September 1973 as a "redress/rework operator." However, Johnson and Johnson did not answer any of the other questions propounded to them by the hospital, such as why he left the job, his dependability, attitude, job knowledge, and whether they (Johnson and Johnson) would re-employ Looman. The record shows that Johnson and Johnson had an address in Sherman, Texas, which is the same city in which the Defendant Hospital was located. It ap-

pears to us that Johnson and Johnson's failure to answer some of the above critical questions concerning Looman's job suitability would be enough to put the Hospital on inquiry that a follow-up should be made. However, even though the former employer was there in the same city, no effort was made by the Hospital to find out why the questions were not answered by Johnson and Johnson.

As stated, Looman listed in his employment application as another former employer reference the U.S. Navy where he stated therein that he served as a "corpsman" from October, 1972, until June 1973, some eight months. The Hospital made no attempt to make a reference check with the United States Navy where Looman represented he had received his medical training. One of the Defendant's witnesses testified that the reason they did not check with the Navy was because they had not had any cooperation with the armed services in the past with reference to employment experience. However, during trial preparation, Plaintiff-Appellee secured a signed authorization from Looman and sent it in to a government records unit accompanied by a request for his naval records, and receive back in the mail Looman's complete naval record in ten days' time. Had the Defendant Hospital followed this procedure and made the reference check with the Navy, they would have learned that Mr. Looman had been expelled from the Navy Medical Corps School after only one month's training, that he had a serious drug problem, and a criminal record. One of the Defendant's personnel testified that the Hospital would not have hired Mr. Looman as an orderly had they known the facts shown by the Navy records before he was hired by the Hospital, on the basis that he was unfit to serve as an orderly.

Moreover, Mr. Looman listed as personal references on the employment application three people, to wit, a Rev. Glass, a Rev. James, and one Bill Bentley, all of whom were shown to have local telephone numbers, and two of whom, Rev. Glass and Rev. James, were shown to have local street addresses. The only personal reference which the Hospital made any attempt to check upon was that of Rev. James, who made no reply to the inquiry. It seems to us that it would have been an easy matter for the Defendant to have checked out these personal references before hiring Mr. Looman, which was not done by the Defendant.

According to the Hospital's hiring policies, verification of at least one employment reference and at least one personal reference were supposed to be accomplished *prior* to the applicant's being hired. Of course, the purpose of a correct implementation of the hiring policy was to enable the Hospital to evaluate the applicant's experience, qualifications, and character independently of the applicant's representations, and thereby to prevent the employment of incompetent and unfit employees from committing injurious acts to patients.

Here we have for all practical purposes a complete disregard of, and a complete violation of the stated hiring policies of the Hospital.

Appellant's five points of error assert there is no evidence to support the jury's findings in answer to Special Issues No. 4 (wherein the jury found the Hospital to be reckless in hiring Mr. Looman), and No. 7 (wherein the jury awarded $18,000.00 exemplary damages).

■ The controlling question before us, then, is whether the record contains any evidence of probative value to support the jury's answers to Special Issues Nos. 4 and 7, concerning the award of exemplary damages. In considering this "no evidence" question, we are required to view the evidence in its most favorable light in support of these jury findings, considering only the evidence and inferences which support the findings and rejecting the evidence and the inferences which are contrary to such findings. Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 361.

Our Supreme Court has long adhered to the rule that gross negligence, to be the ground for exemplary damages, should be that "entire want of care which would raise

the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Missouri Pacific Ry. Co. v. Shuford* (1888) 72 Tex. 165, 10 S.W. 408; *Atlas Chemical Industries, Inc. v. Anderson* (Tex.1975) 524 S.W.2d 681. In the case at bar, the trial court's definition of "recklessness" is couched in the language used by our Supreme Court to define "gross negligence" in the above cited cases.

More specifically, the rule governing the case at bar is stated as follows:

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if

. . .

"(b) the agent was unfit and the principal was reckless in employing him, . .." *King v. McGuff* (1950) 149 Tex. 432, 234 S.W.2d 403; *Fisher v. Carrousel Motor Hotel, Inc.* (Tex.1967) 424 S.W.2d 627. Also see *Fort Worth Elevators Co. v. Russell* (1934) 123 Tex. 128, 70 S.W.2d 397; *Phillips Oil Co. v. Linn* (5th Cir. 1952) 194 F.2d 903.

In the case at bar, we are of the opinion and hold that there is evidence of probative force in the record to the effect that the Defendant-Appellant Hospital demonstrated an entire want of care as to indicate that the hiring of Mr. Looman was the result of conscious indifference to the rights, welfare and safety of the patients in the hospital. In short, the Hospital was so interested in filling the jobs that they consciously jeopardized the health, welfare, and safety of their patients, which included Plaintiff-Appellee Davis. We therefore overrule Appellant's points of error and affirm the trial court's judgment.

AFFIRMED.