In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-506 CV


____________________



HOUSTON CAB COMPANY, Appellant



V.



WILLIAM J. FIELDS, Appellee






On Appeal from the 284th District Court


Montgomery County, Texas


Trial Cause No. 04-01-00005-CV






 OPINION


 The issue on appeal is whether the evidence supports the jury's verdict that a taxicab
company negligently entrusted a taxicab to an independent contractor. William Fields sued
Houston Cab Company and Felicia Simmons for injuries he sustained while attempting to
enter Simmons's cab. The jury found Simmons negligent and found that Houston Cab
negligently entrusted the cab to Simmons. The jury awarded Fields $418,806.31 in damages,
and the trial court rendered judgment for that amount against Houston Cab and Simmons,
jointly and severally. Houston Cab appeals. We reverse and render judgment that Fields
recover nothing against Houston Cab, and affirm the judgment against Simmons.

I. Background


Fields's Accident


 On November 13, 2003, William Fields, his wife, and two of their friends took a cab
from a restaurant to a tennis club. Simmons drove the cab, and she agreed to return later to
pick them up. Fields claimed that as he was getting in the back seat of the cab during the
return portion of his trip, the cab accelerated before he was completely in. As a result, Fields
fell on the street on his hands, elbows, and knees. Simmons claimed that her cab never
moved, and she testified that Fields stumbled either over his feet or off the curb. Fields's
treating physician testified that the accident caused a cartilage tear in his right knee and a
herniated disk. Ultimately, Fields had knee surgery to repair the cartilage. The jury found
that Simmons was negligent and that her negligence was a proximate cause of Fields's injury.

Independent Contractor Agreement and Related Forms


 Three days before the November 13 accident, Simmons executed an independent
contractor agreement with Houston Cab Company. (1) Houston Cab agreed to provide
Simmons with a taxicab, an authorized taxicab medallion, and access to a dispatching
service. In return, Simmons agreed to pay Houston Cab a fee, which was not to exceed $105
for a twenty-four hour period. Under the agreement, Simmons had the sole discretion to
determine what zones or areas she worked in, what days or hours she worked, the routes she
would use to transport passengers, and the methods by which she would obtain customers. 
 Simmons testified that prior to signing the independent contractor agreement on
November 10, she had completed an enrollee information form and an enrollment form for
independent contractor drivers. The actual forms that Simmons completed were lost. A
representative of Houston Cab, however, identified two exemplar forms as the types that
Simmons would have completed in November 2003. Among other prerequisites, the "new
enrollee form" required an applicant to "have the past three (3) years of licensed driving
experience in the United States." In addition to other questions, the "driver enrollment form"
asked whether the applicant's license had ever been suspended or revoked. 

Simmons's Driving History 


 Simmons originally obtained a Texas driver's license in March 1997. Records from
the Texas Department of Public Safety ("DPS") show that Simmons's driver's license was
suspended on January 13, 2000, for lack of liability insurance. At trial, Simmons
acknowledged that she did not have a driver's license from January 13, 2000, until October
29, 2003. On October 29, Simmons obtained a temporary driver's permit and then received
her taxicab license from the City of Houston on November 6, 2003. Simmons testified that
she began driving the cab on November 10, that she had never driven a cab before November
2003, and that she had not driven a motor vehicle at all for the three-year period before
October 2003 when she obtained her temporary permit.

 According to Stuart McKenty, a representative of Houston Cab, the company 
obtained information about Simmons's driving record from DAC Services, a commercial
firm. McKenty testified that DAC represented to Houston Cab that it purchased its
information from the DPS. The DAC record for Simmons, which appears to be limited to
a three-year report of information prior to January 10, 2003, did not reveal her prior license
suspension, her receipt of two citations for failing to have liability insurance, or her receipt
of a citation in an injury accident. DPS records that were admitted at trial contained all of
this information, however.

II. Issue


 Raising one appellate issue, Houston Cab contends the evidence is legally insufficient
to show that Houston Cab negligently entrusted the cab to Simmons. (2) In particular, Houston
Cab argues that the evidence is legally insufficient to show that Simmons was an incompetent
or reckless driver or that Houston Cab knew or should have known that she was incompetent
or reckless.

 Fields contends there is legally sufficient evidence of Simmons's incompetence and
of Houston Cab's negligent entrustment. As to Simmons's incompetence, Fields argues that
the suspension of Simmons's driver's license for lack of insurance is legally sufficient
evidence that she was incompetent. He also argues that Houston Cab's violation of its policy
requiring drivers to have three years of driving experience and the testimony of Houston
Cab's witnesses represent legally sufficient evidence to support the jury's determination that
Simmons was an incompetent driver. As to the jury finding on negligent entrustment, Fields
maintains that Houston Cab's failure to request Simmons's driving record from the
Department of Public Safety represents legally sufficient evidence of Houston Cab's
negligence. To support this argument, Fields relies on section 521.459 of the Texas
Transportation Code, which is entitled "Employment of Unlicensed Driver" and provides: 

 (a) Before employing a person as an operator of a motor vehicle used
to transport persons or property, an employer shall request from the
department:


 (1) a list of convictions for traffic violations contained in the
department records on the potential employee; and

 (2) a verification that the person has a license.

 

 (b) A person may not employ a person as an operator of a motor vehicle
used to transport persons or property who does not hold the appropriate
driver's license to operate the vehicle as provided by this chapter.


Tex. Transp. Code Ann. § 521.459 (Vernon 2007).


III. Discussion



 The Texas Supreme Court recently confirmed the requirements for establishing
liability for negligent entrustment. See Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d
754, 758 (Tex. 2007) (citing Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596
(Tex. 1987)). Under Mayes, Fields had to prove that: (1) Houston Cab entrusted the vehicle
to Simmons; (2) Simmons was an unlicensed, incompetent, or reckless driver; (3) at the time
of the entrustment, Houston Cab knew or should have known that Simmons was an
unlicensed, incompetent, or reckless driver; (4) Simmons was negligent on the occasion in
question; and (5) Simmons's negligence proximately caused the accident. See id. 

 This appeal concerns the second and third elements. Houston Cab argues that the
evidence is legally insufficient for three reasons. First, Houston Cab asserts that at the time
it entrusted Simmons with the cab she had a valid driver's license, as well as a valid cab
license. Second, Houston Cab argues that Simmons's only two convictions for driving-related offenses were for a lack of car insurance, not for reckless driving. Third, despite
Simmons's receipt of a ticket for an injury-related accident, Houston Cab points to the
absence of evidence that Simmons had been found at fault in any traffic accident before the
one involving Fields's injury.

 Evidence is legally sufficient if it "would enable reasonable and fair-minded people
to reach the verdict under review." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005). Generally, we "credit favorable evidence if reasonable jurors could, and disregard
contrary evidence unless reasonable jurors could not." Id. The Keller Court, however, also
instructed that we cannot disregard some types of contrary evidence. Id. at 810-18. One
such type is competency evidence. Id. at 812. As an example, the Keller Court noted that
"an employee's testimony that he was in the course and scope of his employment is legally
insufficient to support a verdict against his employer if the evidence shows that legal
conclusion to be incompetent." Id.

Is Simmons's Driving Record Legally Sufficient Evidence That She Was 


An Unlicensed, Incompetent, or Reckless Driver?



 In this case, the record shows that Simmons was a licensed driver when she contracted
with Houston Cab and when Fields was injured. The record also shows that Simmons
received a taxicab license from the City of Houston prior to the accident. The evidence,
therefore, eliminates any question regarding whether Simmons was licensed at the time of
the accident. See Mayes, 236 S.W.3d at 758. Thus, we focus on whether legally sufficient
evidence shows that Simmons was an incompetent or reckless driver. See id. 

 The Texas Supreme Court's legal-sufficiency analysis of evidence relating to a
driver's record in Goodyear v. Mayes is persuasive as applied to this negligent entrustment
case. See 236 S.W.3d at 754. Goodyear's employee, Corte Adams, had three prior traffic
tickets in four years, including one for driving without insurance (the type of offense that
caused Simmons's license suspension). Id. at 758. The two other tickets were moving
violations-one for causing a rear-end collision and the other for speeding. Id. Nevertheless,
the Texas Supreme Court found Adams's prior record constituted legally insufficient
evidence of incompetence or recklessness. Id.

 In this case, Simmons's pre-employment driving history is better than the record of
Adams, the driver before the Mayes court. Simmons's driving record reveals that she had
convictions for two traffic offenses (neither of which were moving violations), one citation
for an injury accident, and one suspension. The two convictions were for lack of motor
vehicle liability insurance, one in December 1997 and the other in February 1998. In 1999,
Simmons was cited for her involvement in one injury accident, but the record does not show
a conviction for this citation. Thus, this citation is insufficient to establish that Simmons was
incompetent or reckless. See Hines v. Nelson, 547 S.W.2d 378, 386 (Tex. Civ. App.-Tyler
1977, no writ) (noting that "a driving record containing listed violations or accidents in
which no indication of guilt or fault is indicated is insufficient to show that the individual
concerned was a habitually reckless and incompetent driver").

 Simmons's two citations and accompanying convictions for driving without insurance
occurred more than five years before the Fields accident. While driving without insurance
is a statutory violation and may be questionable financially, it is not evidence that one is a
reckless or incompetent driver who might endanger the physical safety of others. See Tex.
Transp. Code Ann. § 601.051 (Vernon 1999); Mayes, 236 S.W.3d at 758. Thus, we agree
that Simmons's no-insurance citations are insufficient to show her incompetence or
recklessness. See Mayes, 236 S.W.3d at 758. 

 Simmons's license suspension, which resulted from her failure to carry insurance, is
also insufficient to show her incompetence or recklessness. In Nobbie v. Agency Rent-A-Car,
Inc., two suspensions were insufficient to prove incompetence or recklessness even though
they were paired with other offenses. See 763 S.W.2d 590 (Tex. App.-Corpus Christi 1988,
writ denied) (finding evidence insufficient when it consisted of two suspensions, a prior
speeding ticket, and a citation for a defective headlamp).

 We hold that proof of a driver's license suspension for failing to carry liability
insurance is legally insufficient proof of a driver's recklessness or incompetence. In
summary, we find nothing in Simmons's driving record to support the jury's finding that 
prior to Fields's injury, Simmons was a reckless or incompetent driver.

 Houston Cab's Three-Year Policy 



 Houston Cab's internal policies required applicants to have had "the past three (3)
years of licensed driving experience in the United States." According to Barbara Vogelsang,
a Houston Cab representative who testified at trial, this policy required that an applicant have
driving experience during the three years immediately prior to the application date.
Vogelsang agreed that according to Houston Cab's rules, Simmons should not have been
driving a cab. However, Vogelsang did not explain why Houston Cab had a three-year
license policy, nor did she testify that the policy was adopted in order to reduce or eliminate
Houston Cab's hiring of incompetent or reckless drivers.

 Fields argues that a company's violation of its own policy can be legally sufficient
evidence of incompetence and negligence. In support of his argument, Fields cites Wilson
N. Jones Memorial Hospital v. Davis, 553 S.W.2d 180 (Tex. Civ. App.-Waco 1977, writ
ref'd n.r.e.) and Greater Houston Transportation Co. v. Zrubeck, 850 S.W.2d 579 (Tex.
App.-Corpus Christi 1993, writ denied). In Davis, the hospital hired an orderly without
checking his references as required by the hospital's hiring policies. 553 S.W.2d at 181. 
When improperly attempting to remove a catheter, the orderly injured a patient. Id. The
Davis Court noted that if the hospital had followed its procedures requiring that an
applicant's references be checked, the hospital would have learned that the applicant had
been expelled from the Navy Medical Corps School after only one month's training and that
he had a serious drug problem and a criminal record. Id. at 182. A hospital representative
testified that the hospital would not have hired the orderly had it known the facts shown by
his Navy records. Id. The Davis Court affirmed an exemplary damages award because there
was "evidence of probative force in the record to the effect that the [hospital] demonstrated
an entire want of care as to indicate that the hiring of [the orderly] was the result of conscious
indifference to the rights, welfare and safety of the patients in the hospital." Id. at 183.

 In Zrubeck, Greater Houston Transportation contracted to provide transportation
services for elderly, handicapped, and mentally retarded passengers of MetroLift. 850
S.W.2d at 581. The accident in question involved the transport of a quadriplegic passenger.
Id. at 582. While the Greater Houston driver properly secured the passenger's wheelchair
to the railway of the van she was driving, she did not secure him in his wheelchair with a
seatbelt. Id. When the van's driver made a sudden stop, the passenger fell out of his
wheelchair and broke both of his legs. Id. at 582-83. Undisputed evidence presented at trial
showed that mandatory seat belt usage was one of Greater Houston's safety policies. Id. at
591. In evaluating the sufficiency of the evidence to support the jury's determination that
Greater Houston had been consciously indifferent to its passengers' welfare by not enforcing
its written policy, the court stated that "the jury could have inferred that Greater Houston
failed to implement its seat belt policy," and that such failure indicated a "conscious
disregard" of the welfare of its wheelchair passengers. Id. at 592.

 Houston Cab notes that neither Davis nor Zrubeck deal with negligent entrustment. 
Instead, the issues in both Davis and Zrubeck concern whether there was sufficient evidence
of the defendants' conscious disregard of a risk to support the respective jury awards of
exemplary damages. Davis, 553 S.W.2d at 183; Zrubeck, 850 S.W.2d at 591-92. In the case
before us, the question is whether there is legally sufficient evidence to establish that
Simmons was reckless or incompetent. What Houston Cab knew or should have known is
a separate issue that we do not reach. 

 In our opinion, evidence showing that Houston Cab violated its independent-contracting policy does not relieve Fields from the legal requirement that he prove each
element of his negligent entrustment claim. While the testimony relied on by Fields shows
that Simmons did not meet Houston Cab's own rules, the issue in this case is not whether
Houston Cab was negligent in contracting with Simmons, but whether Houston Cab
negligently entrusted the cab to her. The only issues submitted by Fields to the jury were
based on his negligent entrustment claim. 



Testimony of McKenty and Daniels 


 The jury also heard testimony from two other witnesses called by Houston Cab-Stuart
McKenty, Houston Cab's safety manager, and Blanton Daniels, the transportation manager
for the City of Houston. McKenty testified that Simmons would not have been competent
under the company's rules if she had only been licensed for a few days before she started
driving the cab. Because competency under the company's rules is not the same as
incompetency under Texas negligent entrustment law, McKenty's testimony is legally
insufficient to establish that Simmons was reckless or incompetent. See generally Avalos v.
Brown Automotive Center, Inc., 63 S.W.3d 42, 45, 49 (Tex. App.-San Antonio 2001, no pet.)
(finding no negligent entrustment despite allegations that defendant violated its internal
procedures in lending a vehicle involved in an accident).

 Daniels manages the City of Houston's office that issues licenses and permits for
vehicles for hire, including taxicabs. Houston Cab called Daniels as a witness to establish
that cab companies are not responsible for putting licensed cab drivers through an orientation
or training course. On cross-examination, Daniels admitted that he did not know Simmons's
driving history. Fields's attorney then directed Daniels's attention to Simmons's history
showing that she was first licensed to drive an automobile in March 1997, and that she
received citations on December 21, 1997, and February 11, 1998. Fields's attorney also
directed Daniels to Simmons's citation for involvement in an accident on May 22, 1999, and
to her license suspension on January 13, 2000. As the document shown to Daniels was not
marked or identified, the record is unclear about whether the document indicated why
Simmons had been cited.

 However, Simmons's DPS driving record clearly shows that Simmons received two
citations because she did not have liability coverage, and that she received a third citation in
May 1999 for her involvement in an injury accident. Houston Cab's attorney conducted a
short, redirect exam in which Daniels acknowledged that two of Simmons's citations were
for insurance violations. Fields's attorney then conducted a recross in which he asked 
Daniels again about Simmons's driving history, as follows:

 Q. Did you see why she was cited for no insurance?

 

 A. I didn't get a chance to read it, all of it.

 

 Q. Speeding, speeding, speeding, accident. A short while after she got
her license.

 

 A. Yes, sir.

 

 Q. Goes a period of years with no license. And would you think -
would it be fair to say we presume she's not driving during that period because
it would be against the law to drive, wouldn't it?

 

 A. It would be for her to be driving during that time, yes.

 

 Q. So we know within less than two years of her getting her license
she's got multiple violations and an accident, and the license is suspended? 


 A. According to that record, yes, sir.

 

 Q. Then she comes up and gets a license, three days in October, three
days, six days, nine days - she has a license nine days and she's issued a
permit.

 

 A. Yes, sir.

 

 Q. Do you remember this conversation we had with Mr. Dickens about
City of Houston wanting safe drivers behind the wheel of taxis?

 

 A. Sure.

 

 Q. Does the record indicate to you that she was a safe driver?

 

 A. She has a bad driving history.

 

 Q. Would it indicate to you she's a safe driver?

 

 A. No. It would indicate she's not a safe driver, I agree.

 

 It appears Daniels accepted the attorney's assertion that the record revealed speeding
tickets without his having completely read whatever document he was shown while
testifying. The record, however, contains Simmons's driving record and it is inconsistent
with the assertion by Fields's attorney that Simmons had received three speeding tickets. 
Thus, Daniels's subsequent opinion about Simmons being a "bad driver" appears based
solely upon an assumption about Simmons's driving record that is inconsistent with the
information in evidence. 

 Houston Cab did not object to Daniels's testimony, but an objection is not needed "to
preserve a no-evidence challenge to conclusory expert testimony." Coastal Transp. Co., Inc.
v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004). In Coastal, the Texas
Supreme Court reaffirmed longstanding Texas jurisprudence that "even unobjected-to
conclusory testimony cannot be 'some evidence' to support a judgment." Id. When it is
apparent that the testimony is conclusory, it is deemed non-probative. Id. at 233. A
conclusory and non-probative opinion is legally insufficient to support a jury verdict. See
id. 

 When Daniels offered his opinion about Simmons's ability to drive, it was not based
upon his personal knowledge of her driving ability or upon a thorough review of her driving
record. Instead, Daniels accepted the assertion by Fields's attorney that Simmons's driving
record revealed three prior speeding citations and an accident in a short time after she was
initially licensed. When "an expert's opinion is based on certain assumptions about the facts,
we cannot disregard evidence showing those assumptions were unfounded." City of Keller,
168 S.W.3d at 813. If the face of the record reveals that an expert's assumptions about a
driving record were incorrect, and the record contains no cogent explanation of the expert's
opinion, the opinion is too conclusory to constitute legally sufficient evidence to support a
verdict. See id.; Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995) ("When
an expert's opinion is based on assumed facts that vary materially from the actual, undisputed
facts, the opinion is without probative value and cannot support a verdict or judgment."). 

 Daniels's testimony that Simmons was not a safe driver is too conclusory to be given 
probative value. The face of the record, which includes Simmons's driving record obtained
from the DPS, negates any claim that Simmons had three tickets for speeding prior to the
date of Fields's injury. Because Daniels's opinion about Simmons as a driver was based on
assumed facts that vary materially from the undisputed facts, his opinion has no probative
value.

 Having reviewed Fields's arguments and the evidence, we conclude that Fields has
failed to prove that Simmons, prior to the accident, was reckless or incompetent. See Mayes,
236 S.W.3d at 758 (finding that a plaintiff must show that a driver was unlicensed, reckless,
or incompetent). Accordingly, we reverse the trial court's judgment against Houston Cab
Company and render a take-nothing judgment in favor of Houston Cab Company. The
findings supporting the judgment against Simmons are not challenged on appeal. Therefore,
the trial court's judgment as to Simmons is affirmed. 

 REVERSED AND RENDERED IN PART; AFFIRMED IN PART.

 




 ____________________________

 HOLLIS HORTON

 Justice



Submitted on September 6, 2007

Opinion Delivered March 20, 2008

Before McKeithen, C.J., Kreger and Horton, JJ.
1. Fields initially sued (1) Yellow Cab Company of Houston, Inc., (2) Greater Houston
Transportation Company, (3) Houston Cab Company, and (4) Felicia Simmons. According
to the independent contractor agreement, "Yellow Cab" is a trade name used by Houston
Cab. At trial, Houston Cab was the only remaining corporate defendant and it stipulated that
(1) it entrusted the vehicle to Simmons pursuant to the independent contractor agreement, (2)
the acts of all testifying employees were attributable to Houston Cab Company, and (3) any
evidence offered against the other corporate defendants could be considered as applying to
Houston Cab.
2. Issue one contends that the evidence was both legally and factually insufficient, but
in view of our disposition, we consider only the legal sufficiency arguments. See Tex. R.
App. P. 47.1.