**HOUSTON CAB COMPANY, Appellant,**

v.

**William J. FIELDS, Appellee.**

No. 09–06–506 CV.

Court of Appeals of Texas, Beaumont.

Submitted on Sept. 6, 2007.

Decided March 20, 2008.

Kevin Dubose, Robert Dubose, Alexander Dubose Jones & Townsend LLP, John H. Boswell, Adams & Boswell, P.C., Houston,

John C. Schwambach, Jr., John Stevenson & Associates, Houston, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

The issue on appeal is whether the evidence supports the jury's verdict that a taxicab company negligently entrusted a taxicab to an independent contractor. William Fields sued Houston Cab Company and Felicia Simmons for injuries he sustained while attempting to enter Simmons's cab. The jury found Simmons negligent and found that Houston Cab negligently entrusted the cab to Simmons. The jury awarded Fields $418,806.31 in damages, and the trial court rendered judgment for that amount against Houston Cab and Simmons, jointly and severally. Houston Cab appeals. We reverse and render judgment that Fields recover nothing against Houston Cab, and affirm the judgment against Simmons.

### I. Background

#### Fields's Accident

On November 13, 2003, William Fields, his wife, and two of their friends took a cab from a restaurant to a tennis club. Simmons drove the cab, and she agreed to return later to pick them up. Fields claimed that as he was getting in the back seat of the cab during the return portion of his trip, the cab accelerated before he was completely in. As a result, Fields fell on the street on his hands, elbows, and knees. Simmons claimed that her cab never moved, and she testified that Fields stumbled either over his feet or off the curb. Fields's treating physician testified that the accident caused a cartilage tear in his right knee and a herniated disk. Ultimately, Fields had knee surgery to repair the cartilage. The jury found that Simmons was negligent and that her negligence was a proximate cause of Fields's injury.

#### Independent Contractor Agreement and Related Forms

Three days before the November 13 accident, Simmons executed an independent contractor agreement with Houston Cab Company.[1] Houston Cab agreed to provide Simmons with a taxicab, an author-

---

1. Fields initially sued (1) Yellow Cab Company of Houston, Inc., (2) Greater Houston Transportation Company, (3) Houston Cab Company, and (4) Felicia Simmons. According to the independent contractor agreement, "Yellow Cab" is a trade name used by Houston Cab. At trial, Houston Cab was the only remaining corporate defendant and it stipulated that (1) it entrusted the vehicle to Simmons pursuant to the independent contractor agreement, (2) the acts of all testifying employees were attributable to Houston Cab Company, and (3) any evidence offered against the other corporate defendants could be considered as applying to Houston Cab.

ized taxicab medallion, and access to a dispatching service. In return, Simmons agreed to pay Houston Cab a fee, which was not to exceed $105 for a twenty-four hour period. Under the agreement, Simmons had the sole discretion to determine what zones or areas she worked in, what days or hours she worked, the routes she would use to transport passengers, and the methods by which she would obtain customers.

Simmons testified that prior to signing the independent contractor agreement on November 10, she had completed an enrollee information form and an enrollment form for independent contractor drivers. The actual forms that Simmons completed were lost. A representative of Houston Cab, however, identified two exemplar forms as the types that Simmons would have completed in November 2003. Among other prerequisites, the "new enrollee form" required an applicant to "have the past three (3) years of licensed driving experience in the United States." In addition to other questions, the "driver enrollment form" asked whether the applicant's license had ever been suspended or revoked.

### Simmons's Driving History

Simmons originally obtained a Texas driver's license in March 1997. Records from the Texas Department of Public Safety ("DPS") show that Simmons's driver's license was suspended on January 13, 2000, for lack of liability insurance. At trial, Simmons acknowledged that she did not have a driver's license from January 13, 2000, until October 29, 2003. On October 29, Simmons obtained a temporary driver's permit and then received her taxicab license from the City of Houston on November 6, 2003. Simmons testified that she began driving the cab on November 10, that she had never driven a cab before November 2003, and that she had not driven a motor vehicle at all for the three-year period before October 2003 when she obtained her temporary permit.

According to Stuart McKenty, a representative of Houston Cab, the company obtained information about Simmons's driving record from DAC Services, a commercial firm. McKenty testified that DAC represented to Houston Cab that it purchased its information from the DPS. The DAC record for Simmons, which appears to be limited to a three-year report of information prior to January 10, 2003, did not reveal her prior license suspension, her receipt of two citations for failing to have liability insurance, or her receipt of a citation in an injury accident. DPS records that were admitted at trial contained all of this information, however.

## II. Issue

Raising one appellate issue, Houston Cab contends the evidence is legally insufficient to show that Houston Cab negligently entrusted the cab to Simmons.[2] In particular, Houston Cab argues that the evidence is legally insufficient to show that Simmons was an incompetent or reckless driver or that Houston Cab knew or should have known that she was incompetent or reckless.

Fields contends there is legally sufficient evidence of Simmons's incompetence and of Houston Cab's negligent entrustment. As to Simmons's incompetence, Fields argues that the suspension of Simmons's driver's license for lack of insurance is legally sufficient evidence that she

---

**2.** Issue one contends that the evidence was both legally and factually insufficient, but in view of our disposition, we consider only the legal sufficiency arguments. *See* TEX.R.APP. P. 47.1.

was incompetent. He also argues that Houston Cab's violation of its policy requiring drivers to have three years of driving experience and the testimony of Houston Cab's witnesses represent legally sufficient evidence to support the jury's determination that Simmons was an incompetent driver. As to the jury finding on negligent entrustment, Fields maintains that Houston Cab's failure to request Simmons's driving record from the Department of Public Safety represents legally sufficient evidence of Houston Cab's negligence. To support this argument, Fields relies on section 521.459 of the Texas Transportation Code, which is entitled "Employment of Unlicensed Driver" and provides:

(a) Before employing a person as an operator of a motor vehicle used to transport persons or property, an employer shall request from the department:

(1) a list of convictions for traffic violations contained in the department records on the potential employee; and

(2) a verification that the person has a license.

(b) A person may not employ a person as an operator of a motor vehicle used to transport persons or property who does not hold the appropriate driver's license to operate the vehicle as provided by this chapter.

TEX. TRANSP. CODE ANN. § 521.459 (Vernon 2007).

## III. Discussion

■ The Texas Supreme Court recently confirmed the requirements for establishing liability for negligent entrustment. *See Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 758 (Tex.2007) (citing *Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595, 596 (Tex.1987)). Under *Mayes,* Fields had to prove that: (1) Houston Cab entrusted the vehicle to Simmons; (2) Simmons was an unlicensed, incompetent, or reckless driver; (3) at the time of the entrustment, Houston Cab knew or should have known that Simmons was an unlicensed, incompetent, or reckless driver; (4) Simmons was negligent on the occasion in question; and (5) Simmons's negligence proximately caused the accident. *See id.*

This appeal concerns the second and third elements. Houston Cab argues that the evidence is legally insufficient for three reasons. First, Houston Cab asserts that at the time it entrusted Simmons with the cab she had a valid driver's license, as well as a valid cab license. Second, Houston Cab argues that Simmons's only two convictions for driving-related offenses were for a lack of car insurance, not for reckless driving. Third, despite Simmons's receipt of a ticket for an injury-related accident, Houston Cab points to the absence of evidence that Simmons had been found at fault in any traffic accident before the one involving Fields's injury.

■ Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). Generally, we "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* The *Keller* Court, however, also instructed that we cannot disregard some types of contrary evidence. *Id.* at 810–18. One such type is competency evidence. *Id.* at 812. As an example, the *Keller* Court noted that "an employee's testimony that he was in the course and scope of his employment is legally insufficient to support a verdict against his employer if the evidence shows that legal conclusion to be incompetent." *Id.*

*Is Simmons's Driving Record Legally Sufficient Evidence That She Was An Unlicensed, Incompetent, or Reckless Driver?*

In this case, the record shows that Simmons was a licensed driver when she contracted with Houston Cab and when Fields was injured. The record also shows that Simmons received a taxicab license from the City of Houston prior to the accident. The evidence, therefore, eliminates any question regarding whether Simmons was licensed at the time of the accident. *See Mayes,* 236 S.W.3d at 758. Thus, we focus on whether legally sufficient evidence shows that Simmons was an incompetent or reckless driver. *See id.*

The Texas Supreme Court's legal-sufficiency analysis of evidence relating to a driver's record in *Goodyear v. Mayes* is persuasive as applied to this negligent entrustment case. *See* 236 S.W.3d at 754. Goodyear's employee, Corte Adams, had three prior traffic tickets in four years, including one for driving without insurance (the type of offense that caused Simmons's license suspension). *Id.* at 758. The two other tickets were moving violations—one for causing a rear-end collision and the other for speeding. *Id.* Nevertheless, the Texas Supreme Court found Adams's prior record constituted legally insufficient evidence of incompetence or recklessness. *Id.*

■ In this case, Simmons's pre-employment driving history is better than the record of Adams, the driver before the *Mayes* court. Simmons's driving record reveals that she had convictions for two traffic offenses (neither of which were moving violations), one citation for an injury accident, and one suspension. The two convictions were for lack of motor vehicle liability insurance, one in December 1997 and the other in February 1998. In 1999, Simmons was cited for her involvement in one injury accident, but the record does not show a conviction for this citation. Thus, this citation is insufficient to establish that Simmons was incompetent or reckless. *See Hines v. Nelson,* 547 S.W.2d 378, 386 (Tex.Civ.App.-Tyler 1977, no writ) (noting that "a driving record containing listed violations or accidents in which no indication of guilt or fault is indicated is insufficient to show that the individual concerned was a habitually reckless and incompetent driver").

■ Simmons's two citations and accompanying convictions for driving without insurance occurred more than five years before the Fields accident. While driving without insurance is a statutory violation and may be questionable financially, it is not evidence that one is a reckless or incompetent driver who might endanger the physical safety of others. *See* TEX. TRANSP. CODE ANN. § 601.051 (Vernon 1999); *Mayes,* 236 S.W.3d at 758. Thus, we agree that Simmons's no-insurance citations are insufficient to show her incompetence or recklessness. *See Mayes,* 236 S.W.3d at 758.

■ Simmons's license suspension, which resulted from her failure to carry insurance, is also insufficient to show her incompetence or recklessness. In *Nobbie v. Agency Rent-A-Car, Inc.,* two suspensions were insufficient to prove incompetence or recklessness even though they were paired with other offenses. *See* 763 S.W.2d 590 (Tex.App.-Corpus Christi 1988, writ denied) (finding evidence insufficient when it consisted of two suspensions, a prior speeding ticket, and a citation for a defective headlamp).

We hold that proof of a driver's license suspension for failing to carry liability insurance is legally insufficient proof of a driver's recklessness or incompetence. In summary, we find nothing in Simmons's

driving record to support the jury's finding that prior to Fields's injury, Simmons was a reckless or incompetent driver.

### Houston Cab's Three–Year Policy

■ Houston Cab's internal policies required applicants to have had "the past three (3) years of licensed driving experience in the United States." According to Barbara Vogelsang, a Houston Cab representative who testified at trial, this policy required that an applicant have driving experience during the three years immediately prior to the application date. Vogelsang agreed that according to Houston Cab's rules, Simmons should not have been driving a cab. However, Vogelsang did not explain why Houston Cab had a three-year license policy, nor did she testify that the policy was adopted in order to reduce or eliminate Houston Cab's hiring of incompetent or reckless drivers.

Fields argues that a company's violation of its own policy can be legally sufficient evidence of incompetence and negligence. In support of his argument, Fields cites *Wilson N. Jones Memorial Hospital v. Davis*, 553 S.W.2d 180 (Tex.Civ.App.-Waco 1977, writ ref'd n.r.e.) and *Greater Houston Transportation Co. v. Zrubeck*, 850 S.W.2d 579 (Tex.App.-Corpus Christi 1993, writ denied). In *Davis*, the hospital hired an orderly without checking his references as required by the hospital's hiring policies. 553 S.W.2d at 181. When improperly attempting to remove a catheter, the orderly injured a patient. *Id.* The *Davis* Court noted that if the hospital had followed its procedures requiring that an applicant's references be checked, the hospital would have learned that the applicant had been expelled from the Navy Medical Corps School after only one month's training and that he had a serious drug problem and a criminal record. *Id.* at 182. A hospital representative testified that the hospital would not have hired the orderly had it known the facts shown by his Navy records. *Id.* The *Davis* Court affirmed an exemplary damages award because there was "evidence of probative force in the record to the effect that the [hospital] demonstrated an entire want of care as to indicate that the hiring of [the orderly] was the result of conscious indifference to the rights, welfare and safety of the patients in the hospital." *Id.* at 183.

In *Zrubeck*, Greater Houston Transportation contracted to provide transportation services for elderly, handicapped, and mentally retarded passengers of MetroLift. 850 S.W.2d at 581. The accident in question involved the transport of a quadriplegic passenger. *Id.* at 582. While the Greater Houston driver properly secured the passenger's wheelchair to the railway of the van she was driving, she did not secure him in his wheelchair with a seatbelt. *Id.* When the van's driver made a sudden stop, the passenger fell out of his wheelchair and broke both of his legs. *Id.* at 582–83. Undisputed evidence presented at trial showed that mandatory seat belt usage was one of Greater Houston's safety policies. *Id.* at 591. In evaluating the sufficiency of the evidence to support the jury's determination that Greater Houston had been consciously indifferent to its passengers' welfare by not enforcing its written policy, the court stated that "the jury could have inferred that Greater Houston failed to implement its seat belt policy," and that such failure indicated a "conscious disregard" of the welfare of its wheelchair passengers. *Id.* at 592.

Houston Cab notes that neither *Davis* nor *Zrubeck* deal with negligent entrustment. Instead, the issues in both *Davis* and *Zrubeck* concern whether there was sufficient evidence of the defendants' conscious disregard of a risk to support the respective jury awards of exemplary dam-

ages. *Davis,* 553 S.W.2d at 183; *Zrubeck,* 850 S.W.2d at 591–92. In the case before us, the question is whether there is legally sufficient evidence to establish that Simmons was reckless or incompetent. What Houston Cab knew or should have known is a separate issue that we do not reach.

In our opinion, evidence showing that Houston Cab violated its independent-contracting policy does not relieve Fields from the legal requirement that he prove each element of his negligent entrustment claim. While the testimony relied on by Fields shows that Simmons did not meet Houston Cab's own rules, the issue in this case is not whether Houston Cab was negligent in contracting with Simmons, but whether Houston Cab negligently entrusted the cab to her. The only issues submitted by Fields to the jury were based on his negligent entrustment claim.

*Testimony of McKenty and Daniels*

■ The jury also heard testimony from two other witnesses called by Houston Cab–Stuart McKenty, Houston Cab's safety manager, and Blanton Daniels, the transportation manager for the City of Houston. McKenty testified that Simmons would not have been competent under the company's rules if she had only been licensed for a few days before she started driving the cab. Because competency under the company's rules is not the same as incompetency under Texas negligent entrustment law, McKenty's testimony is legally insufficient to establish that Simmons was reckless or incompetent. *See generally Avalos v. Brown Automotive Center, Inc.,* 63 S.W.3d 42, 45, 49 (Tex. App.-San Antonio 2001, no pet.) (finding no negligent entrustment despite allegations that defendant violated its internal procedures in lending a vehicle involved in an accident).

■ Daniels manages the City of Houston's office that issues licenses and permits for vehicles for hire, including taxicabs. Houston Cab called Daniels as a witness to establish that cab companies are not responsible for putting licensed cab drivers through an orientation or training course. On cross-examination, Daniels admitted that he did not know Simmons's driving history. Fields's attorney then directed Daniels's attention to Simmons's history showing that she was first licensed to drive an automobile in March 1997, and that she received citations on December 21, 1997, and February 11, 1998. Fields's attorney also directed Daniels to Simmons's citation for involvement in an accident on May 22, 1999, and to her license suspension on January 13, 2000. As the document shown to Daniels was not marked or identified, the record is unclear about whether the document indicated why Simmons had been cited.

However, Simmons's DPS driving record clearly shows that Simmons received two citations because she did not have liability coverage, and that she received a third citation in May 1999 for her involvement in an injury accident. Houston Cab's attorney conducted a short, redirect exam in which Daniels acknowledged that two of Simmons's citations were for insurance violations. Fields's attorney then conducted a recross in which he asked Daniels again about Simmons's driving history, as follows:

Q. Did you see why she was cited for no insurance?

A. I didn't get a chance to read it, all of it.

Q. Speeding, speeding, speeding, accident. A short while after she got her license.

A. Yes, sir.

Q. Goes a period of years with no license. And would you think—would it

be fair to say we presume she's not driving during that period because it would be against the law to drive, wouldn't it?

A. It would be for her to be driving during that time, yes.

Q. So we know within less than two years of her getting her license she's got multiple violations and an accident, and the license is suspended?

A. According to that record, yes, sir.

Q. Then she comes up and gets a license, three days in October, three days, six days, nine days—she has a license nine days and she's issued a permit.

A. Yes, sir.

Q. Do you remember this conversation we had with Mr. Dickens about City of Houston wanting safe drivers behind the wheel of taxis?

A. Sure.

Q. Does the record indicate to you that she was a safe driver?

A. She has a bad driving history.

Q. Would it indicate to you she's a safe driver?

A. No. It would indicate she's not a safe driver, I agree.

It appears Daniels accepted the attorney's assertion that the record revealed speeding tickets without his having completely read whatever document he was shown while testifying. The record, however, contains Simmons's driving record and it is inconsistent with the assertion by Fields's attorney that Simmons had received three speeding tickets. Thus, Daniels's subsequent opinion about Simmons being a "bad driver" appears based solely upon an assumption about Simmons's driving record that is inconsistent with the information in evidence.

▇▇▇▇ Houston Cab did not object to Daniels's testimony, but an objection is not needed "to preserve a no-evidence challenge to conclusory expert testimony." *Coastal Transport Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex.2004). In *Coastal*, the Texas Supreme Court reaffirmed longstanding Texas jurisprudence that "even unobjected-to conclusory testimony cannot be 'some evidence' to support a judgment." *Id.* When it is apparent that the testimony is conclusory, it is deemed non-probative. *Id.* at 233. A conclusory and non-probative opinion is legally insufficient to support a jury verdict. *See id.*

▇▇▇▇ When Daniels offered his opinion about Simmons's ability to drive, it was not based upon his personal knowledge of her driving ability or upon a thorough review of her driving record. Instead, Daniels accepted the assertion by Fields's attorney that Simmons's driving record revealed three prior speeding citations and an accident in a short time after she was initially licensed. When "an expert's opinion is based on certain assumptions about the facts, we cannot disregard evidence showing those assumptions were unfounded." *City of Keller*, 168 S.W.3d at 813. If the face of the record reveals that an expert's assumptions about a driving record were incorrect, and the record contains no cogent explanation of the expert's opinion, the opinion is too conclusory to constitute legally sufficient evidence to support a verdict. *See id.; Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995) ("When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment.").

Daniels's testimony that Simmons was not a safe driver is too conclusory to be given probative value. The face of the

record, which includes Simmons's driving record obtained from the DPS, negates any claim that Simmons had three tickets for speeding prior to the date of Fields's injury. Because Daniels's opinion about Simmons as a driver was based on assumed facts that vary materially from the undisputed facts, his opinion has no probative value.

Having reviewed Fields's arguments and the evidence, we conclude that Fields has failed to prove that Simmons, prior to the accident, was reckless or incompetent. *See Mayes*, 236 S.W.3d at 758 (finding that a plaintiff must show that a driver was unlicensed, reckless, or incompetent). Accordingly, we reverse the trial court's judgment against Houston Cab Company and render a take-nothing judgment in favor of Houston Cab Company. The findings supporting the judgment against Simmons are not challenged on appeal. Therefore, the trial court's judgment as to Simmons is affirmed.

REVERSED AND RENDERED IN PART; AFFIRMED IN PART.