**AFFIRMED and Opinion Filed December 13, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-20-00310-CV**

**MOLLY FREYER AND DAVID FREYER, JR., INDIVIDUALLY AND INDEPENDENTLY AS NEXT FRIENDS OF D.C.F. AND J.M.F., MINORS,** Appellants
**V.**
**LYFT, INC., Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-14517**

## OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Smith

The trial court granted summary judgment in favor of appellee Lyft, Inc. after concluding Lyft was not responsible for appellant Molly Freyer's[1] injuries she sustained while she was riding in a car driven by one of Lyft's drivers. On appeal, Freyer asks the Court to analyze the Transportation Network Companies (TNC) statute and answer the following questions: (1) "Under certain circumstances, the

---

[1] Appellants are Molly and David Freyer, Jr., individually and independently as next friends of their two minor children. However, we refer only to appellant Molly Freyer, who was injured in the accident, throughout the opinion.

TNC statute deems drivers to be independent contractors. When Lyft and its driver fail to comply with the statutory requirements to trigger the independent contractor provision, can a plaintiff still maintain common law negligence claims which impose respondeat superior liability for the negligent acts or omissions of an employee?" (2) "Even if the independent contractor provision of the TNC statute applies, can a plaintiff still maintain direct negligence claims for the negligent hiring and retention of an independent contractor?" and (3) Did Freyer offer more than a scintilla of evidence regarding her negligent undertaking claim against Lyft?

We conclude Lyft established that it complied with the TNC's statutory requirements triggering the independent contractor provision as a matter of law. Further, regardless of whether the statute abrogates common law negligence claims, Freyer, under the facts of this case, failed to raise genuine issues of material fact defeating summary judgment. Accordingly, we affirm the trial court's judgment.

## Background

Rebecca Blaser applied to drive for Lyft in May 2017. Blaser submitted her driver's license, proof of insurance, and pictures of her registration and license plate. She also authorized Lyft to conduct a background check.

By applying to drive for Lyft, Blaser accepted Lyft's "Terms of Service." The "Terms of Service" Agreement included an obligation for Blaser to possess a valid driver's license and be medically fit to drive. The Agreement further defined Lyft's relationship with drivers as "independent contracting parties."

–2–

Sterling Talent Solutions, an independent third-party, conducted criminal background screenings for Lyft. The background report for Blaser did not return any criminal felonies or sex offender history for the previous seven years. SambaSafety, Inc., another independent third-party, ran the background check on Blaser's Department of Public Safety (DPS) driving record, which did not reveal any past "convictions and crash involvements." Blaser then began driving for Lyft and drove without incident from May to August 2017.

On August 30, 2017, Freyer submitted a request through Lyft's smartphone app for a ride from DFW Airport. Around 2:00 p.m., Blaser, while working for Lyft, picked up Freyer. About twenty minutes into the ride, Blaser commented she was not feeling well. Freyer told Blaser she could pull over because Freyer was not in a hurry, but Blaser continued to drive. Freyer asked her two more times if she was going to pull over.

Shortly thereafter, Blaser experienced a medical episode causing her to fall in and out of consciousness. Freyer described Blaser as "eyes closed, head fell back, her arms fell off the steering wheel, and her mouth open." Freyer thought Blaser was dead.

With Blaser unconscious, the car swerved erratically as other drivers honked. The car eventually moved from the far-left lane to the right shoulder where it scraped against a concrete barrier. As the car continued to roll, Freyer opened the back door and tried to exit the car; however, Blaser suddenly regained consciousness and

accelerated forward. Freyer described the acceleration as a "slow glug" that was not fast. Freyer's body was "pinned" between the back door and the concrete barrier. Her foot was dragged along the concrete barrier for approximately 150 to 200 feet before the car stopped.

Emergency vehicles arrived and transported Blaser to the hospital. Blaser was diagnosed with an upper respiratory infection and vasovagal syncope, defined as a "fainting spell in which the blood flow to the brain is reduced because of a sudden drop in heart rate and blood pressure."

DPS temporarily suspended Blaser's license for review by the Texas Medical Advisory Board. After a review, the Board determined she was medically fit to drive and reinstated her license a month later. Lyft's Trust & Safety Response Team ultimately concluded that Blaser violated Lyft's Terms of Service by being involved in a collision while using Lyft's platform and permanently deactivated her account, meaning she can never drive for Lyft again.

Freyer sustained permanent foot, ankle, and leg injuries; her right big toe and part of her right foot were amputated.

Freyer sued Lyft and Blaser. She settled her negligence claims against Blaser, and Blaser is not a party to this appeal.

Freyer filed claims against Lyft for (1) respondeat superior alleging an employer/employee relationship, (2) negligent hiring of an independent contractor, (3) negligent entrustment, (4) negligent hiring/retention of an employee, (5)

—4—

negligent training and supervision, and (6) negligent undertaking.  She argued that Blaser, as a Lyft employee, acted in the course and scope of her employment when she committed the acts causing the accident and subsequent injuries.  Freyer also argued Lyft exercised control over Blaser and allowed her to drive despite her lack of insurance and status as a reckless and/or incompetent driver, which Lyft knew or should have known.  Moreover, she alleged that had Lyft exercised ordinary care when investigating, screening, and or/supervising Blaser, it would have discovered that Blaser presented a risk of harm and should not have been hired or retained as an employee.

Lyft filed a traditional and no evidence motion for summary judgment.  It argued that it was entitled to judgment as a matter of law because (1) Blaser suffered an unforeseeable incapacity; (2) the TNC statute mandates that drivers such as Blaser are independent contractors; therefore, Lyft did not control, direct, or manage her; (3) Lyft confirmed Blaser was a competent driver; and (4) Lyft did not voluntarily undertake any duty causing Freyer's injuries.  It also argued no evidence supported any elements of Freyer's claims because she could not show (1) Blaser was negligent when she suffered an unforeseeable incapacity and emergency; (2) Lyft was negligent in approving Blaser as a competent driver to use its platform; (3) Lyft breached any duty owed; and (4) any breach caused her injuries.

In her response, Freyer argued Lyft failed to comply with the TNC statute to qualify Blaser as an independent contractor, and fact issues existed regarding her negligence claims.

The trial court denied Lyft's motion for summary judgment on Freyer's negligent undertaking claim. In a separate order, it granted Lyft's traditional and no evidence motions for summary judgment on Freyer's respondeat superior, negligent hiring of an independent contractor, negligent hiring, negligent retention, negligent training, negligent supervision, and negligent entrustment claims.

Lyft filed a motion for reconsideration of its summary judgment on Freyer's negligent undertaking claim, which the trial court granted. The trial court entered a final judgment on January 20, 2020. After denying a motion for new trial, the trial court signed an amended final judgment on February 19, 2020. This appeal followed.

**Summary Judgment Standards of Review**

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019); *Gore v. Smith*, No. 05-19-00156-CV, 2020 WL 4435312, at *2 (Tex. App.—Dallas Aug. 3, 2020, pet. denied) (mem. op.). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of

–6–

material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019).

Under rule 166a(i), a party may move for no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of a claim or no evidence of a defense on which an adverse party has the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). The trial court may grant a no-evidence motion for summary judgment unless the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the elements challenged by the motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id*. at 601. If the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Id*. When determining whether the nonmovant has produced more than a scintilla of evidence, we view the evidence in the light most favorable to the nonmovant and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

**Independent Contractor Under the TNC**

In her first issue, Freyer argues Blaser was not an independent contractor pursuant to the TNC statute because Blaser did not satisfy a statutory requirement. Specifically, Blaser did not have liability insurance at the time of the accident; therefore, her respondeat superior claim against Lyft should not be barred. Lyft responds that Blaser was an independent contractor under the TNC statute, and Freyer's interpretation of the statute's independent contractor requirements ignores the rules of statutory construction, which leads to an absurd result eviscerating the purpose of the TNC statute.

Under the doctrine of respondeat superior, an employer is responsible for the negligence of an employee acting within the course and scope of her employment, even though the employer has not personally committed a wrong. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). The most frequently proffered justification for imposing such liability is that the employer has the right to control the means and methods of the agent or employee's work. *Id*.

Here, the TNC statute includes a specific statutory provision establishing independent contractor status. *See* TEX. OCC. CODE ANN. § 2402.114. The section is titled "Drivers as Independent Contractors" and provides as follows:

> A driver who is authorized to log in to a transportation network company's digital network is considered an independent contractor for all purposes, and not an employee of the company in any manner, if:
>
> (1) the company does not:

–8–

(A) prescribe the specific hours during which the driver is required to be logged in to the company's digital network;

(B) impose restrictions on the driver's ability to use other transportation network companies' digital networks;

(C) limit the territory within which the driver may provide digitally prearranged rides; or

(D) restrict the driver from engaging in another occupation or business; and

(2) the company and the driver agree in writing that the driver is an independent contractor.

*Id.*

Lyft satisfied subsections (1) and (2) of section 2402.114, and Freyer does not contend otherwise. Rather, Freyer argues Blaser was not an independent contractor because she did not satisfy the "Driver Requirements" section of the statute. *See id.* § 2402.107. This section provides, in relevant part, as follows:

(a) Before permitting an individual to log in as a driver on the company's digital network, a transportation network company must:

(1) confirm that an individual:

(C) possesses proof of registration and automobile financial responsibility for each motor vehicle to be used to provide digitally prearranged rides.

*Id.* § 2402.107(a)(1)(C).

It is undisputed that Blaser submitted proof of insurance when she applied to drive for Lyft. Her GEICO policy was effective from May 14, 2017, through September 5, 2017. Lyft confirmed her insurance at the time she applied. It is also undisputed that at the time of the accident, Blaser's insurance was ineffective

because her payment was not processed, which per her deposition testimony, she did not realize.

Freyer argues that because Blaser's insurance lapsed, she was not "a driver who is authorized to log in to a transportation network company's digital network"; therefore, she could not satisfy the statutory requirements of an independent contractor. *Id*. § 2402.114. Freyer necessarily asks the Court to read sections 2402.107 and 2402.114 together to reach her desired conclusion. Lyft, on the other hand, argues the rules of statutory construction belie such a conclusion.

Statutory construction is a legal question, which is reviewed de novo to ascertain and give effect to the legislature's intent. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). To discern that intent, we must begin with the "plain and common meaning of the statute's words." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We read the statute as a whole and not just isolated portions. *Id*. We also consider the objective the legislature sought to achieve through the statute, as well as the consequences of a particular construction. *Id*.; *see also* TEX. GOV'T CODE ANN § 311.023(1), (5); *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009).

Applying the rules of statutory construction, we reject Freyer's interpretation that a "driver who is authorized to log in," as referenced in the "Drivers as Independent Contractors" section, incorporates the "Driver Requirements" section that requires proof of automobile financial responsibility. First, the plain language

of section 2402.114 for independent contractors does not incorporate a liability insurance requirement or a cross-reference to section 2402.107. *See* TEX. OCC. CODE ANN. §§ 2402.107 ("Driver Requirements"), 2402.114 ("Drivers as Independent Contractors"). Second, each section contains different temporal language. Section 2402.107 requires a TNC to confirm an individual meets certain statutory requirements "*before permitting* an individual to log in as a driver." *See id.* § 2402.107. Such language indicates actions a TNC must take before allowing an individual to log in as a driver. However, section 2402.114 describes an independent contractor, in part, as "a driver who is authorized." The past tense use of "authorized" indicates the legislature's intent to describe access already granted to a driver. We agree with Lyft that this shift in tense reflects a shift in status from an "individual" to a "driver."

The plain language of a statute is the surest guide to the legislature's intent. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012). Thus, under the TNC statutory scheme, driver requirements must be met before a TNC confers driver status. However, the "Driver's Requirements" do not control independent contractor status. To conclude otherwise would result in an absurd result contravening the purpose of the TNC statute.

Freyer's interpretation of the statute would require Lyft to confirm the driver requirements, including proof of insurance, before every log-in attempt by every driver. Such an interpretation is unreasonable and unnecessary. For example, once

–11–

Lyft has confirmed a driver is over the age of eighteen, this requirement is satisfied and will not change. *See* TEX. OCC. CODE ANN. § 2402.107(a)(1)(A). Similarly, a driver's license is valid for several years and a vehicle registration is valid for one year. *Id.* § 2402.107(a)(1)(B), (C). Any number of things could cause a person's driver's license or insurance policy to become invalid once issued. We conclude that Lyft is not required to verify these requirements are met before a driver logs in each time. Therefore, we disagree with Freyer's statutory interpretation.

The legislative purpose of the TNC statute was to address the numerous municipalities with ordinances regulating such companies, which "result[ed] in a patchwork of regulations across the state, making it difficult for these companies to maintain uniform policies and procedures." *See* S. Comm. on State Affairs, Bill Analysis, H.B. 100, 85th Leg., R.S. (April 3, 2017). The legislature further noted that the "myriad of regulations" were "often arbitrary and onerous." *See* S. Comm. on State Affairs, Bill Analysis, Tex. H.B. 100, 85th Leg., R.S. (April 20, 2017). "H.B. 100 [sought] to remedy this situation by implementing uniform requirements and operational standards for these companies statewide." *See* S. Comm. on State Affairs, Bill Analysis, Tex. H.B. 100, 85th Leg., R.S. (April 3, 2017). Thus, the legislative intent of the TNC statute indicates the State's desire to eliminate arbitrary requirements on companies such as Lyft. *See* S. Comm. on State Affairs Bill Analysis, Tex. H.B. 100, 85th Leg., R.S. (April 20, 2017). Requiring Lyft to confirm the driver's requirements every time a driver attempts to log in so that the driver is

only then a "driver who is authorized to log in," thereby triggering the independent contractor provision of section 2402.114, frustrates the purpose of the TNC statute.

And finally, had the legislature intended such requirements, it could have included language indicating the obligation, as it did in a separate subsection of the "Driver Requirements." *See* TEX. OCC. CODE ANN. § 2402.107(c) (stating a TNC "shall conduct or cause to be conducted an *annual* criminal background check described by Subsection (a)(2) for each driver authorized to access the company's digital network") (emphasis added). The legislature did not.

It is not the role of this Court to read additional language into a statute. Rather, "w[e] presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

Applying the rules of statutory construction, we conclude the "Driver Requirements" section requiring proof of automobile financial responsibility is not incorporated into the "Drivers as Independent Contractors." Because Lyft conclusively established both the "Driver Requirements" and Blaser's independent contractor status pursuant to section 2402.114 as a matter of law and Freyer failed to produce more than a scintilla of evidence raising a genuine issue of material fact, the trial court properly granted summary judgment against Freyer on her respondeat superior claim. We overrule Freyer's first issue.

## Negligent Hiring and Retention of an Independent Contractor

In her second issue, Freyer argues that if we conclude Blaser is an independent contractor (which we have), she still presented a fact issue as to whether Lyft negligently hired and retained Blaser as an independent contractor. Lyft asserted in the trial court that it could not be found vicariously liable or "directly liable for negligent hiring [or] retention." Freyer, in response, argued the TNC statute may abrogate respondeat superior liability, but does not abrogate common law claims for negligent hiring and retention. Lyft, however, maintains Freyer misconstrues its argument: It never asserted the TNC statute barred all direct negligence claims but rather the statute provided a standard of care for "hiring" drivers that "exceeds the duty of ordinary care required by common law." Thus, if a TNC complies with the statute, it necessarily complies with the common law.

Before addressing the merits of Freyer's claims for negligent hiring and retention of an independent contractor, we must determine whether the claims are properly before us. The parties agree the trial court granted summary judgment against Freyer on her negligent hiring of an independent contractor claim. However, they disagree about whether the trial court granted summary judgment on her negligent retention of an independent contractor claim.

The record indicates the following:

- Freyer pled a cause of action for negligent hiring of an independent contractor.

- Lyft's motion for summary judgment argued it was not "vicariously liable or directly liable for negligent hiring [or] retention" of Blaser.

- Freyer responded and argued that she produced evidence to survive summary judgment regarding her claims for both negligent hiring of an independent contractor and negligent hiring of an employee (she discussed each in separate sections of her response in ¶¶ 87, 96).

- Freyer further argued in her response that Lyft negligently retained Blaser (¶ 103).

- The trial court's order granted, in relevant part, "Lyft's motion for summary judgment on Plaintiffs' claims of Respondeat Superior; Negligent Hiring of an Independent Contractor; Negligent Hiring; Negligent Retention."

It is undisputed that Freyer did not plead a cause of action for negligent retention of an independent contractor. She argues, however, that the cause of action was tried by consent through the summary judgment motion and response; therefore, she may challenge the trial court's ruling on appeal. We disagree.

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. TEX. R. CIV. P. 67; *Case Corp. v. Hi-Class Boutique Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied). "Trial by consent may be appropriate in some limited summary judgment contexts." *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 655 (Tex. App.—Dallas 2013, pet. denied). However, trial by consent is not intended to establish a general rule of practice and should be applied with care and in no event in a doubtful situation. *See RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 328 (Tex. App.—Houston

[1st Dist.] 1997, pet. denied). To determine whether an issue was tried by consent, we examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Id.*

Here, Lyft's motion for summary judgment moved for judgment on an unpled negligent retention of an independent contractor claim. Freyer's response did not include any argument addressing a claim for negligent retention of an independent contractor. Rather, her response addressed the negligent retention of an employee by an employer. We likewise cannot ignore that Freyer's response addressed negligent hiring of an independent contractor and negligent hiring of an employee separately, which indicates her intention to address the claims independently and as two separate causes of action. Moreover, the trial court specifically granted and dismissed two negligent hiring claims—"Negligent Hiring of an Independent Contractor; Negligent Hiring"—but only one negligent retention claim.

Accordingly, we do not believe the parties tried the unpled claim of negligent retention of an independent contractor by consent or at the very least, this presents a "doubtful situation" in which a court should not apply the doctrine. *See id.* We now consider the merits of Freyer's negligent hiring of an independent contractor claim.

Texas recognizes a cause of action for negligently hiring an independent contractor. *Mireles v. Ashley*, 201 S.W.3d 779, 782 (Tex. App.—Amarillo 2006, no pet.); *Wasson v. Stracener*, 786 S.W.2d 414, 422 (Tex. App.—Texarkana 1990, writ denied). One hiring an independent contractor may be held responsible for the

–16–

contractor's negligent acts if (1) the employer knew or should have known that the contractor was incompetent and (2) a third person was injured because of the contractor's incompetence. *Mireles*, 201 S.W.3d at 782. A person employing an independent contractor is required to use ordinary care in hiring the contractor. *Id*.; *see also King v. Assocs. Commercial Corp.*, 744 S.W.2d 209, 213 (Tex. App.— Texarkana 1987, writ denied). If the performance of the contract requires driving a vehicle, the person employing the independent contractor is required to investigate the independent contractor's competency to drive. *See Mireles*, 201 S.W.3d at 782; *see also Wasson*, 786 S.W.2d at 422. If an inquiry was made by the employer, the question becomes whether the inquiry made was sufficient to constitute the exercise of due care. *See King*, 744 S.W.2d at 213.

Freyer first contends that she offered evidence raising a fact issue concerning Lyft's efforts to investigate Blaser's competency to drive passengers for hire. Specifically, she argues Lyft did not comply with the TNC statute because it outsourced background checks to a fully automated computer system with no oversight by a Lyft employee. Freyer contends that had Lyft conducted the background check, it would have discovered Blaser's various violations of the law and prior collisions. Instead, the background check provided by the third-party yielded incomplete results.

Lyft responds that nothing within the statute prohibits it from outsourcing background checks; therefore, it fully complied with the TNC statute prior to hiring

Blaser. *See* TEX. OCC. CODE ANN. § 2402.107 ("Driver's Requirements"). Moreover, Lyft asserts that even if it had conducted the background check, nothing within Blaser's DPS record indicated she was a reckless or incompetent driver.

Compliance with statutory standards is evidence of the use of reasonable care but is not necessarily dispositive of that issue. *See Morris v. JTM Materials*, 78 S.W.3d 28, 50 (Tex. App.—Fort Worth 2002, no pet.). An employer cannot be liable for negligent hiring if the independent contractor was not in fact incompetent. *King*, 744 S.W.2d at 213. An employer is not negligent when there is nothing in the employee's background that would cause a reasonable employer not to hire the employee. *Mejia-Rosa v. John Moore Servs., Inc.*, No. 01-17-00955-CV, 2019 WL 3330972, at *11 (Tex. App.—Houston [1st Dist.] July 25, 2019, no pet.) (mem. op.). Here, as explained below, even if Lyft had obtained and reviewed Blaser's driving record before hiring her, nothing in her record indicated she was reckless or incompetent to drive.[2] *See, e.g., Wasson*, 786 S.W.2d at 422 (noting that even if one was negligent in manner of selecting an independent contractor, that would not create liability unless there was also evidence contractor was incompetent); *see also Mejia-Rosa*, 2019 WL 3330972, at *11 n.5 (disregarding whether company failed to

---

[2] To the extent Freyer frames the issue as whether Lyft was required to investigate Blaser's competency "to drive passengers" for hire, not merely investigate her competency as a driver, she has not cited any authority for this proposition. Instead, "authority addressing this element of negligent hiring is scant"; therefore, "courts have looked to negligent entrustment case law addressing incompetence and recklessness in evaluating whether a driver was unfit or incompetent." *Mejia-Rosa*, 2019 WL 3330972, at *11 n..

properly evaluate driving qualifications because record contained no evidence employee was an unlicensed, incompetent, or unfit driver).

First, we begin by recognizing the possession of a valid, unrestricted driver's license is evidence of a driver's competency absent any evidence to the contrary. *Batte v. Hendricks*, 137 S.W.3d 790, 791 (Tex. App.—Dallas 2004, pet. denied); *Avalos v. Brown Auto. Ctr., Inc.*, 63 S.W.3d 42, 48 (Tex. App.—San Antonio 2001, no pet.). It is undisputed Blaser possessed a valid, unrestricted driver's license when she applied to drive for Lyft. Thus, her license evinced that she possessed a minimum of competence and skill as a driver "absent any circumstances to show [Lyft] otherwise knew or should have known that [Blaser] was an incompetent or reckless driver." *See Bartley v. Budget Rent-A-Car Corp.*, 919 S.W.2d 747, 752 (Tex. App.—Amarillo 1996, writ denied).

Second, as explained below, the evidence Freyer relies on to raise a fact issue regarding Blaser's incompetence or recklessness as a driver is no evidence or legally insufficient to raise a genuine issue of material fact to overcome summary judgment. Freyer relies on the following evidence from Blaser's DPS certified record, which SambaSafety's background check did not reveal:

- Suspended – Default Installment Agreement No Insurance (11/02/2009 to 11/20/2009) (09/01/2009 to 09/16/2009) (02/27/2009 to 04/13/2009) (11/28/2008 to 01/07/2009) (11/26/2008 to 02/04/2009) (09/22/2008 to 03/31/2009)

- Suspended – Surcharge Due No Insurance (04/28/2008 to 09/22/2008) (04/27/2007 to 11/23/2007)

–19–

- Crash (01/18/2017) with possible injury; no citation issued

- Crash (04/28/2016) with possible injury; no citation issued

- Convictions for speeding (07/30/2008) and (11/20/2006)

- Conviction for no motor vehicle liability insurance (12/18/2006)

Both parties cite numerous cases to support their arguments; however, the case we find most instructive is *Houston Cab Co. v. Fields*, 249 S.W.3d 741 (Tex. App.—Beaumont 2008, no pet.). Houston Cab hired Simmons as an independent contractor and obtained a copy of her driving record from a third-party service. *Id*. The record provided by the third-party did not reveal a prior license suspension, the receipt of two citations for failing to have liability insurance, or a citation from an injury accident. *Id*. at 744.

Three days after Simmons signed the independent contractor agreement, Fields was injured when he was getting into the backseat of Simmons' cab. *Id*. at 743. Fields sued Houston Cab and Simmons for his injuries. *Id*. at 743. At trial, the DPS records admitted into evidence revealed the missing information regarding Simmons' driving history. *Id*. at 744. A jury found that Houston Cab negligently entrusted a taxicab to an independent contractor and awarded Fields $418,806.31 in damages. *Id*. at 743.

On appeal, Houston Cab argued the evidence was legally insufficient to support the jury's verdict for negligent entrustment because the evidence did not

establish that Simmons was an incompetent or reckless driver or that Houston Cab knew or should have known that she was an incompetent or reckless driver. *Id*. at 744. Houston Cab argued the only two convictions for driving-related offenses were for lack of car insurance, not reckless driving. *Id*. at 745. Further, although Simmons was cited for an injury-related accident, Houston Cab argued there was no evidence she was at fault. *Id*.

The court considered each of these arguments and agreed with Houston Cab.[3] The court noted that while driving without insurance is a statutory violation and "may be questionable financially, it is not evidence that one is a reckless or incompetent driver who might endanger the physical safety of others." *Id*. (citing TEX. TRANSP. CODE ANN. § 601.051). Thus, Simmons' two convictions for lack of insurance five and six years before the accident in question could not support the jury's verdict. *Id*.

The *Houston Cab* court did not give any weight to her citation for involvement in one injury accident because the record did not show a conviction for it. *Id*. ("[T]his citation is insufficient to establish that Simmons was incompetent or reckless.") (citing *Hines v. Nelson*, 547 S.W.2d 378, 386 (Tex. App.—Tyler 1977, no writ) (noting "a driving record containing listed violations or accidents in which

---

[3] To the extent Freyer accuses Lyft of looking at evidence in isolation, we note that courts, when reviewing these cases have in fact analyzed and considered each piece of evidence. *See id*.; *see also Harbin v. Fisher*, No.07-18-00167-CV, 2019 WL 2462346, at *3 (Tex. App.—Amarillo June 12, 2019, no pet.) (mem. op.) (finding that "these three pieces of evidence" from a driver's history were legally insufficient).

no indication of guilt or fault is indicated is insufficient to show that the individual concerned was a habitually reckless or incompetent driver")).

Finally, the court determined that one suspension of Simmons' license resulting from her failure to carry insurance was also insufficient to show recklessness or incompetence. *Id*. (citing *Nobbie v. Agency Rent-A-Car, Inc*., 763 S.W.2d 590 (Tex. App.—Corpus Christi-Edinburg 1988, writ denied) (finding evidence insufficient when it consisted of two suspensions, a prior speeding ticket, and citation for a defective headlight)). After considering the evidence, and other arguments not relevant to our discussion, the appellate court reversed the trial court's judgment and rendered a take nothing judgment in favor of Houston Cab. *Id*. at 750.

Similarly, Blaser's license was repeatedly suspended for failure to maintain insurance. However, regardless of whether she was a "serial offender" as Freyer describes her, failure to maintain insurance, while "questionable financially," is not evidence of a reckless or incompetent driver. *Id*. at 745. Moreover, her last suspension occurred in 2009, approximately eight years before the accident. *See, e.g.*, *Harbin*, 2019 WL 2462346, at *3 (evidence of three speeding tickets six, seven, and eight years prior to incident and an accident six years prior in which no fault was determined were too remote to create a fact issue regarding driver's recklessness or incompetence thus, evidence legally insufficient).

Blaser's 2006 conviction for no motor liability insurance, which she received over a decade before the accident, is too remote and unrelated to any *driving*

behavior to raise a genuine issue of material fact regarding recklessness or incompetence. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007) (citations for driving without liability insurance, causing a collision, and speeding three to four years prior to accident insufficient to support recklessness and incompetency to drive); *Harbin*, 2019 WL 2462346, at *3 (evidence of three speeding tickets six, seven, and eight years prior to incident and an accident six years prior in which no fault was determined were too remote to create a fact issue regarding the driver's recklessness or incompetence).

We acknowledge Blaser has two prior convictions for speeding—one in 2006 and another in 2008; however, these are likewise too remote or insufficient to create a fact issue regarding recklessness or incompetence. *See Avalos v. Brown Auto. Ctr., Inc.*, 63 S.W.3d 42, 49 (Tex. App.—San Antonio 2001, no pet.) (DWI conviction seven years prior to accident too remote to create a fact issue regarding driver's competence or recklessness); *Beall v. Cooke*, No. 01-00-00150-CV, 2001 WL 699915, at *4 (Tex. App.—Houston [1st Dist.] June 21, 2001, no pet.) (not designated for publication) (affirming no-evidence summary judgment because DWI conviction five years before accident in question and one accident in which driver was not cited insufficient to show driver was a habitually reckless or incompetent driver). *But see Atlantic Indus., Inc. v. Blair*, 457 S.W.3d 511, 518 (Tex. App—El Paso 2014) ("no question" that driver was reckless when he had a long history of arrests for driving while intoxicated including two out of state and

–23–

three in Texas, two of which resulted in convictions), *rev'd on other grounds*, 482 S.W.3d 57 (Tex. 2016) (per curiam); *Mireles*, 201 S.W.3d at 783–84 (eight citations issued over a five and a half year period, five of which were for speeding and another for operating an unsafe vehicle on a roadway, more than a scintilla of evidence to overcome no-evidence summary judgment).

Finally, Freyer argues the "significant collision Blaser caused" on January 18, 2017, four months before Lyft hired her, is evidence raising a fact issue about her incompetence or recklessness. We disagree.

Freyer's information regarding any alleged fault comes from the crash report. However, Blaser's DPS record indicates she was not cited or found at fault for that accident or another accident in 2016. A driving record containing listed violations or accidents in which no guilt or fault is indicated is insufficient to show the individual is a habitually reckless or incompetent driver. *Houston Cab Co.*, 249 S.W.3d at 745; *Beall*, 2001 WL 699915, at *4; *see also Hines*, 547 S.W.2d at 386. Moreover, even if Blaser had been cited for the 2017 accident, one violation or involvement in a previous collision is insufficient to create a fact issue. *See Mireles*, 201 S.W.3d at 782 (noting proof of one previous traffic violation grossly inadequate to establish incompetency or recklessness); *see also Robson v. Gilbreath*, 267 S.W.3d 401, 406 (Tex. App.—Austin 2008, pet. denied); *Monroe v. Grider*, 884 S.W.2d 811, 815 (Tex. App.—Dallas 1994, writ denied) ("Involvement in a previous

collision alone does not create an inference or conclusion that a driver is incompetent or reckless.").

The present facts are distinguishable from *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28 (Tex. App.—Fort Worth 2002, no pet.) in which the court determined a fact issue existed regarding the negligent hiring of an employee. In that case, although there was evidence JTM complied with industry and statutory standards in qualifying its employee to drive, JTM did not obtain a copy of the employee's DPS report or discover numerous offenses. *Id*. at 51. Had JTM acquired and reviewed the report, it would have discovered the driver was convicted of DWI and possession of methamphetamine and pleaded guilty to reckless conduct in response to another DWI offense. *Id*. The court concluded the evidence raised a fact issue concerning whether JTM exercised reasonable care by qualifying a driver who had committed three drug or alcohol-related offenses, the most recent of which occurred less than three years prior to hiring. *Id*.

Here, Blaser's record did not indicate any alcohol or drug-related offenses, which *JTM* focused on. In fact, although the driver in *JTM* had five citations for driving without liability insurance, the court did not emphasize those citations as a reason for reaching its conclusion but instead focused on offenses that would impact one's ability to drive safely. *Id*.

"Negligence is not to be presumed—the mere fact that an independent contractor negligently caused an injury to another affords no presumption that the

employer was negligent in his selection of the contractor." *King*, 744 S.W.2d at 214.

We conclude Freyer's evidence does not raise a genuine issue of material fact as to whether Blaser was, or Lyft knew or should have known that Blaser was, an incompetent or reckless driver at the time Lyft hired her. Even assuming Lyft breached its duty by outsourcing the background check to a third-party, there is no evidence in Blaser's driving record that would have alerted Lyft at the time it hired Blaser that she was unfit to perform the job.[4] *See, e.g.*, *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006) ("As to negligence in hiring, the evidence indicates that even if Fifth Club had investigated [security guard] before hiring him, nothing would have been found that would cause a reasonable employer to not hire [him].");

*see also Ramirez v. Garcia*, No. 07-11-00385-CV, 2016 WL 269095, at *5 (Tex. App.—Amarillo Jan. 20, 2016, no pet.) (mem. op. on remand) ("[E]ven if it could be said that Gonzalez should have inquired further into 3R/Garcia's drivers' qualifications at the time he hired 3R/Garcia, we see no evidence that would have alerted Gonzales at that time that 3R/Garcia was incompetent or unfit to perform the

---

[4] While the majority of Freyer's argument relates to Lyft's failure to conduct an adequate background check of Blaser's driving history, she also asserts Lyft did not assess Blaser's physical fitness to drive. While we question whether Lyft could inquire into Blaser's medical history because of privacy laws, in order to get a valid driver's license, Blaser had to answer certain questions relating to her physical and mental condition. *See* 37 TEX. ADMIN. CODE ANN. § 15.37; *see also Avalos*, 63 S.W.3d at 49 (requiring access to person's health records is inconsistent with Texas law treating such information as confidential prior to lending a car). Because Blaser had a valid, unrestricted driver's license, there was nothing indicating Blaser had any medical condition that would affect her ability to drive. *See, e.g.*, 37 TEX. ADMIN. CODE ANN. § 15.58(1)(B)(v) (discussing referral to medical advisory board for further evaluation prior to issuing or renewing license when applicant indicates "any loss of consciousness or any alteration of consciousness due to cardiovascular problems within the past year").

job."). There is also no evidence that Lyft would have discovered additional, unknown information if it had conducted the background check itself that would have shown Blaser was an incompetent driver. Therefore, the trial court properly granted Lyft's no-evidence motion for summary judgment on Freyer's claim for negligent hiring of an independent contractor. We overrule Freyer's second issue.

Having reached this conclusion, we need not decide whether the TNC statute abrogates common law negligence claims, but instead have assumed for purposes of our analysis that such claims may be raised separately under the common law.[5] TEX. R. APP. P. 47.1.

## Negligent Undertaking

In her final issue, Freyer argues she presented more than a scintilla of evidence to support her negligent undertaking claim. Lyft responds it did not voluntarily undertake or breach a duty to perform background screening services.

In her petition, Freyer alleged, in part, that Lyft voluntarily undertook to perform background screening services that it knew or should have known were necessary for her protection; it failed to exercise reasonable care in performing those services; she relied upon Lyft's performance of those services; and Lyft's

---

[5] "Not only is further discussion unnecessary, imparting further opinion risks providing an advisory opinion." *Prestonwood Tradition, LP v. Jennings*, No. 05-20-00380-CV, 2021 WL 4940863, at *6 n.7 (Tex. App.—Dallas Oct. 22, 2021, no pet.). Courts have no jurisdiction to render advisory opinions. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see also Arch Resorts, L.L.C. v. City of McKinney*, No. 05-15-01108-CV, 2016 WL 3196767, at *2 (Tex. App.—Dallas May 26, 2016, no pet.) (mem. op.).

performance in undertaking the background screening services increased her risk of harm.

To establish a negligent undertaking claim, a plaintiff must establish that (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and (3) either the plaintiff relied upon the defendant's performance or the defendant's performance increased the plaintiff's risk of harm. *Nall v. Plunkett*, 404 S.W.3d 552, 555–56 (Tex. 2013).

A person's duty to exercise reasonable care in performing a voluntarily assumed undertaking is limited to that undertaking. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 839 (Tex. 2000). Lyft argues its "undertaking" was limited solely to contracting with third-party companies to conduct background checks (Freyer refers to them as "background screening services"). Because Lyft did not conduct any of the background checks itself and there is no evidence that it negligently contracted with any of the screening companies, Lyft asserts Freyer's negligent undertaking claim fails.

As extensively discussed above, regardless of whether Lyft voluntarily undertook to conduct background screenings and breached a duty by outsourcing background screenings to a third-party, an issue we do not decide, nothing in Blaser's driving record would have prevented Lyft from hiring her. *See Mejia-Rosa*, 2019 WL 3330972, at *11. Because Blaser's record does not reflect she was a

reckless or incompetent driver, Freyer cannot establish that Lyft's undertaking to perform background screenings increased her risk of harm. *See Nall*, 404 S.W.3d at 556. To reach such a conclusion, we would have to conclude that conducting the background screenings increased the likelihood of Blaser being an incompetent or reckless driver, a conclusion neither the evidence supports nor is rational. *See, e.g., Najera v. Recana Sols., LLC*, No. 14-14-00332-CV, 2015 WL 4985085, *6 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, no pet.) (mem. op.) (affirming summary judgment on negligent undertaking claim related to background check of third party because there was no evidence it increased her harm).

Freyer likewise failed to raise a genuine issue of material fact that she relied upon Lyft's performance of background screening services. In her affidavit, she stated she chose to ride with Lyft because "they advertised themselves as a 'Safe' option and that they 'Go the extra mile for safety.'" Lyft argues this statement is conclusory. We agree.

"A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Lowry v. Tarbox*, 537 S.W.3d 599, 619 (Tex. App.—San Antonio 2017, pet. denied); *Burt v. Denny's, Inc.*, No. 04-19-00363-CV, 2020 WL 1442660, at *6 (Tex. App.—San Antonio Mar. 25, 2020, no pet.) (mem. op.). First, Freyer did not identify any specific advertisement or one that described background screening services. In fact, her affidavit does not include the words "background screening services" or even background checks. Second, although Lyft's website

contains the language Freyer included in her affidavit, Freyer never stated she visited the website prior to the accident or that she relied on Lyft's performance of background screenings prior to choosing Lyft. *See, e.g.*, *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 926 (Tex. App.—Fort Worth 2009, pet. denied) (noting no evidence person saw or relied on advertisement allegedly indicating doctors were employees of hospital). Accordingly, Freyer's affidavit failed to provide the relevant underlying facts to support her conclusion and therefore, it is not competent summary judgment evidence to create a genuine issue of material fact as to reliability.

Lastly, Freyer asserts Lyft also had an ongoing duty to screen drivers such as Blaser. Specifically, Freyer contends that had Lyft continued to perform backgrounds screening services in early and mid-August 2017, when Lyft received two safety alerts from other passengers regarding Blaser's driving, it would have taken action and either suspended or fired Blaser. Instead, Lyft took no actions in response to these alerts thereby increasing her risk of harm. We disagree.

The evidence reflects that Lyft established a platform on its application for customers to rate their drivers, provide feedback, and to report any safety concerns. If a driver received a three-star or lower rating, Lyft's support team reviewed it and determined whether to reach out to the driver or rider.

Lyft knew of two passengers who provided feedback and selected the safety emblem for their experience with Blaser in August 2017. However, a Lyft corporate

representative testified at a deposition, which was attached as summary judgment evidence, that a safety emblem was not necessarily a negative rating. Instead, Lyft considered the submitted star rating along with the safety emblem.

Freyer relies on the following two ratings to support her negligent undertaking claim: On August 7, 2017, a passenger selected the safety emblem after riding with Blaser but also gave her a four-star rating. It was unclear what prompted the user to submit the safety emblem because there was no other feedback; therefore, Lyft did not classify it as a complaint against Blaser so no further inquiry was made.

On August 20, 2017, ten days before the accident, Blaser received a safety emblem with a one-star review, which indicated Blaser "was not really watching the cars around," and the rider "did not feel safe." Lyft made two attempts to contact the rider, but the rider did not respond. Thus, despite Lyft's efforts to investigate the incident, it did not receive any feedback to continue making any further inquiry.

Thus, assuming Lyft affirmatively undertook to perform an ongoing duty to screen Blaser, Freyer has presented no evidence that Lyft's performance increased her risk of harm. Rather, the summary judgment evidence reflects that Lyft investigated both incidents and determined neither warranted any action against Blaser. Freyer presented no other evidence of Lyft's actions or inactions relating to riders' reviews of Blaser supporting Freyer's assertion that Lyft should have suspended or terminated Blaser. *See, e.g.*, *Thornton v. Henkels & McCoy, Inc.*, No. 13-12-00585-CV, 2013 WL 5676026, at *3 (Tex. App.—Corpus Christi-Edinburg

Oct. 17, 2013, no pet.) (mem. op.) (noting negligent undertaking claim requires an "affirmative course of action" by the defendant and cannot be predicated on an alleged omission or failure to act). Thus, the trial court properly granted summary judgment on Freyer's negligent undertaking claim.

### Conclusion

We affirm the trial court's judgment.


/Craig Smith/
CRAIG SMITH
JUSTICE

200310F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MOLLY FREYER AND DAVID
FREYER, JR., INDIVIDUALLY
AND INDEPENDENTLY AS NEXT
FRIENDS OF D.C.F. AND J.M.F.,
MINORS, Appellants

No. 05-20-00310-CV        V.

LYFT, INC., Appellee

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-14517.
Opinion delivered by Justice Smith.
Justices Schenck and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellee LYFT, INC. recover its costs of this appeal
from appellants MOLLY FREYER AND DAVID FREYER, JR.,
INDIVIDUALLY AND INDEPENDENTLY AS NEXT FRIENDS OF D.C.F.
AND J.M.F., MINORS.

Judgment entered December 13, 2021